OSTERHART v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 48361. Submitted June 2, 1980, at Grand Rapids.—Decided January 22, 1981. Leave to appeal applied for.

Kim Osterhart was injured while in the course of his employment when he was pinned between two parked vehicles, one of which had been struck by a third vehicle which left the roadway. He was paid workers' compensation benefits, including medical expenses and lost wages, by his employer's insurer, Celina Mutual Insurance Company. Osterhart's insurer, Detroit Automobile Inter-Insurance Exchange, paid some benefits, but set off the workers' compensation benefits and certain social security benefits Osterhart had received. Osterhart brought an action against the owner and driver of the third vehicle which resulted in a negotiated settlement. Celina Mutual claimed a lien on the proceeds of the settlement as reimbursement for its payment of workers' compensation benefits. Osterhart reached a settlement with Celina and then brought this action against DAIIE to recover the amount paid to Celina plus a pro rata share of attorney fees, claiming that the amount sought represented no-fault benefits which were unpaid and overdue. The Muskegon Circuit Court, Ronald H. Pannucci, J., ordered DAIIE to pay Osterhart the amount that was paid to Celina, but refused the request for attorney fees. DAIIE appeals. *Held:*

Celina's payments to Osterhart represented economic losses. Osterhart's recovery from the tortfeasor was, by virtue of the no-fault act, limited to noneconomic losses. Celina had no right to reimbursement from the proceeds of the tort recovery. Furthermore, DAIIE properly set off from personal injury protection benefits sums equal to the workers' compensation payments made to the plaintiff. The trial court erred in granting judgment in favor of plaintiff.

Reversed.

REFERENCES FOR POINTS IN HEADNOTE

[1] 82 Am Jur 2d, Workmen's Compensation § 426 *et seq.*

Validity and construction of liability policy provision requiring insured to reimburse insurer for payments made under policy. 29 ALR3d 291.

INSURANCE — WORKERS' COMPENSATION — NO-FAULT INSURANCE —
    REIMBURSEMENT OF INSURER — NONECONOMIC LOSS — STAT-
    UTES.

A workers' compensation carrier which has paid benefits to an
    employee who was injured by a negligent driver does not have
    a right to be reimbursed out of the proceeds of a tort recovery
    which the employee receives for his noneconomic damages;
    workers' compensation benefits are paid for economic loss,
    while the employee's tort recovery is limited by the no-fault
    statute to noneconomic loss (MCL 500.3135; MSA 24.13135).

*McCroskey, Libner, VanLeuven, Feldman, Co-chrane & Brock, P.C.,* for plaintiff.

*William J. Hipkiss,* for defendant.

Before: R. B. BURNS, P.J., and MACKENZIE and
J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. On September 26, 1977, while
in the course of employment, plaintiff and two co-
workers were standing on the shoulder of a road
between two parked motor vehicles. A third motor
vehicle, negligently operated by Ken Boroff, Jr.,
went off the traveled portion of the pavement and
struck one of the parked vehicles, pinning plaintiff
between the two parked vehicles. As a result of
this accident, plaintiff was severely and perma-
nently injured. At that time, plaintiff was insured
under a policy of no-fault insurance issued by
defendant.

Since plaintiff's accidental bodily injury occurred
while he was in the course of his employment, he
became entitled to workers' compensation benefits,
which were paid by his employer's insurer, Celina
Mutual Insurance Company. Celina paid all of
plaintiff's medical expenses, more than $12,000,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plus wage benefits of $132 per week during the period of plaintiff's disability. Plaintiff also recovered certain social security disability benefits.

Defendant paid plaintiff some benefits for plaintiff's accidental bodily injury, but set off sums for plaintiff's social security benefits and for his workers' compensation payments. Because all medical expenses had been paid by Celina, defendant paid no medical expenses. Similarly, only a small amount of plaintiff's lost wages were not paid by Celina, so defendant's wage-loss benefit payments were small.

Plaintiff sued Kenneth Boroff and Ken Boroff, Jr., the owner and driver respectively of the striking vehicle, for noneconomic damages resulting from serious bodily injury. The Boroffs were insured for the statutory minimum bodily injury liability insurance coverage of $40,000 for each occurrence, so under the insurance only that amount was available for the third-party tort claims of plaintiff and his two injured co-workers. Plaintiff negotiated a settlement with the Boroffs' insurer, under which plaintiff received $14,810.

Plaintiff claims Celina had a workers' compensation lien on this tort recovery and was entitled to reimbursement in an amount in excess of $14,810. Therefore, plaintiff negotiated a settlement with Celina whereby the latter accepted the sum of $4,936.66 out of the proceeds of the noneconomic damage recovery in full satisfaction of its alleged workers' compensation lien. Plaintiff contends the pro-rata share of the attorneys' fees and costs attributable to the settlement with Celina was $1,105.15.

Plaintiff sued to recover the amount paid to Celina, plus the pro-rata share of attorneys' fees and costs attributable to the Celina settlement, a

total of $6,041.81. Plaintiff claims this amount represents no-fault benefits unpaid and overdue.

Plaintiff moved for summary judgment under GCR 1963, 117.2(3). In an opinion dated October 18, 1979, Muskegon County Circuit Court Judge Ronald H. Pannucci found defendant obligated to pay $4,936.66 on the ground that "any other conclusion leads to an unjustified windfall for defendant". The court refused plaintiff's request for costs and attorneys' fees.

Defendant now appeals by right and no cross-appeal has been filed.

Defendant argues that plaintiff had no obligation to pay monies over to the workers' compensation carrier, as the carrier was not entitled to be reimbursed from plaintiff's tort recovery, and that where plaintiff unnecessarily volunteered to pay Celina he was not entitled to repayment from defendant.

We must determine whether a workers' compensation carrier is entitled to be reimbursed from an injured employee's third-party tort recovery under the no-fault act.[1] The right of a workers' compensation carrier to be reimbursed is statutorily created. MCL 418.827; MSA 17.237(827) provides, in subsection 5:

"In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer

[1] We observe that no question has been raised regarding any setoff in *personal injury protection* benefits for workers' compensation payments or for social security disability benefits. Such a setoff was approved in *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980).

or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits."

In a case that arose before the passage of the no-fault act, *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), the Supreme Court held that a workers' compensation carrier could be reimbursed for its payments for lost income and medical expenses out of a plaintiff's third-party tort recovery for pain and suffering. The Court noted that an injured employee could pursue both a workers' compensation claim and his common-law tort remedy. *Pelkey,* 493. The right of reimbursement was therefore necessary to avoid a double recovery windfall for the injured employee.

The passage of the no-fault act has altered the circumstances under which an injured employee may pursue his common-law tort remedy.[2] Under

[2] The no-fault act provides, in part:

"(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his act or omission, he does not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly and 3 year limitations contained in those sections. The party liable for

the no-fault act, tort liability arising from a motor vehicle accident is abolished, with certain exceptions. Tort liability for noneconomic loss remains only when the injured person suffers death, serious impairment of bodily function or permanent serious disfigurement. MCL 500.3135(1); MSA 24.13135(1). This provision has been recognized as expressing the Legislature's intent to provide compensation for catastrophically injured victims and for victims with extraordinary economic losses in addition to that available under the no-fault act. *Workman v Detroit Automobile Inter-Insurance Exchange,* 404 Mich 477, 509; 274 NW2d 373 (1979).

A split of authority has arisen over the effect of the no-fault act's elimination of most common-law tort remedies on a workers' compensation carrier's right of reimbursement. In the first Court of Appeals case to address this issue, *Wrobel v Wayne County Road Comm,* 79 Mich App 484; 261 NW2d 58 (1977), one panel recognized an "inequitable" result but considered *Pelkey* as binding and allowed a workers' compensation carrier to be reimbursed through an injured employee's tort recovery for noneconomic loss. In *Reliance Ins Co v Messina Trucking, Inc,* 83 Mich App 159; 268 NW2d 328 (1978), another panel distinguished *Pelkey* and denied reimbursement to a workers' compensation carrier. The Court reasoned that under the law applicable when *Pelkey* was decided an injured employee could recover from two sources for economic losses. The Court noted that under the no-fault act, no double recovery was possible, since the injured employee is limited in tort to

damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured." MCL 500.3135; MSA 24.13135.

noneconomic damages. The Court found that the legislative object of making the injured person whole would be frustrated if a workers' compensation carrier could be reimbursed for payments for economic loss from an injured employee's third-party tort recovery for noneconomic loss. The Court held that reimbursement would deprive seriously injured parties of the equal protection of the law. *Reliance Ins, id.,* 165.

The *Reliance* opinion was followed in *Great American Ins Co v Queen,* 86 Mich App 362; 272 NW2d 659 (1978), *lv gtd* 405 Mich 823 (1979).[3] A similar result was reached on statutory interpretation grounds, without reaching the equal protection argument, in *Flower v Gensterblum,* 86 Mich App 561; 272 NW2d 726 (1978). In the analogous case of *Foremost Life Ins Co v Waters,* 88 Mich App 599; 278 NW2d 688 (1979), the Court cited *Reliance* and its progeny and found the legislative intent to make an injured party whole would be thwarted if subrogation of a disability insurer were required for noneconomic losses.

We believe the result reached in *Reliance* most accurately reflects the Legislature's intent. The Supreme Court in *Pelkey* allowed a workers' compensation carrier subrogation rights in order to avoid the possibility of a windfall double recovery. Under the subsequently enacted no-fault act, however, the Legislature abolished tort liability for these same economic losses. We regard the no-fault act's limitation on tort recovery as likewise limiting a workers' compensation carrier's standing under MCL 418.827; MSA 17.237(827). In so doing,

---

[3] After this opinion was circulated for approval, the Supreme Court affirmed this Court's opinion in *Great American Ins Co v Queen,* 410 Mich 73; 300 NW2d 895 (1980), applying reasoning similar to that used in this opinion.

we agree with the analysis of *Flower v Gensterblum, supra,* 570.

In the instant case, we find that Celina had no right to be reimbursed from plaintiff's tort recovery for noneconomic losses. Defendant properly set off from plaintiff's personal injury protection benefits sums equal to the workers' compensation payment plaintiff had received. The trial court erred in granting summary judgment for plaintiff and in awarding plaintiff $4,936.66.

The trial court's decision is reversed.

No costs, a public question being involved.